All right, the first case we're going to hear this morning is the United States versus, is it Toby or Toebbe? Toebbe, Your Honor. Toebbe, okay. And Ms. Carmichael, we'll hear from you. Good morning, Your Honor. Jessica Carmichael and Barry Beck representing Diana Toebbe, an accomplice to espionage and government cooperator who is serving a sentence seven times what both the government and the defense jointly requested. Can you speak up a little bit? Yes, Your Honor. She is serving a sentence seven times what both the government and the defense jointly requested and three years over that of her husband, the principal offender. This matter should be remanded for resentencing before a different district judge for three reasons. First, the compounding of errors at her sentencing hearing denied Mrs. Toebbe a fair sentencing process with a neutral arbiter based on facts. Second, the government breached... You know, these are a lot of conclusions you're reaching, but it seems to me that the court, the district court sentence within the sentencing guideline range, and your argument has to be that the guideline range was miscalculated. But if it's within the guideline range, that's the range set by the commission, and the bottom of the guideline range could hardly be unfair if it's correct. And it seems to me your argument has to be that the guideline range calculated by the court was incorrect. But if it's correct, none of your arguments fly, do they? Your Honor, first of all, it was incorrect, and I will address that in a minute. I understand that's your position, and I'm interested in hearing your arguments on that. But my whole point comes to, it's a strange argument to make that everything's unfair and everything's biased if the court's sentenced at the low end of the guideline range. So the question in this case is, is the right guideline range applicable? But the guideline range is pre-established by the commission, and you can take that on. But I don't understand you challenging the sentencing commission. Your Honor, it is not simply the guidelines range calculation that was an error in this case. Mrs. Tobey was sentenced based on imaginary facts that the district judge conjured up, and which both the defense and the prosecutor vehemently tried to dispel the district court of that notion. Was 37 the applicable guideline range as a starting point level? That was the correct starting point, yes, Your Honor. And after that, there were three enhancements imposed by the district court, right? There were... The obstruction of justice, 2K1, and the acceptance of responsibility. No, Your Honor. The court took those away. The obstruction of justice enhancement was applied. The acceptance of responsibility enhancement was... Excuse me, reduction was not applied, and the 5K was not... Starting with 37, the court made three adjustments, all of which amounted to enhancements. Took away the acceptance of responsibility, took away the cooperation, and added two for the obstruction. That's correct, Your Honor. So it seems to me if the court had sentenced at 37 level, you wouldn't be here, right? Your Honor, that's a hard question to answer because it would in part depend on what the ultimate sentence was and the judge's basis for that sentence. If that sentence was still based on erroneous speculative theories, then we may very well... Read with me the base level was 37 for this offense. That's correct, Your Honor. Okay, well then, that's all I asked. If the court had sentenced at 37, you would have no objection, would you? I cannot say that with certainty, Your Honor, because it would depend on... But your point is you wouldn't have an objection to the guidelines then. You might have an objection to the actual sentence. That's exactly correct, Your Honor. So can I go back to the appellate waiver? Yes, Your Honor. And I understand, at least as Judge Nemar has just laid out, there's sort of three guideline errors. And I guess I'm having a little trouble with that idea. I understand your speculative theory point, and we can talk about that in a minute. But with the substantial assistance, the obstruction, and whatever the third one is, I just forgot. The lack of acceptance. Lack of acceptance. I understand your arguments on all three of those, and maybe some of them are, like, decent. But what I can't figure out is how I ever reach those given the appellate waiver. And I understand the court's hesitation, Your Honor. I think here there are three ways that gets around the appellate waiver. The first is recalling back to the false information that Mrs. Tobey was sentenced based on the false speculations that she was sentenced on, which undoubtedly would have infected the findings of the court on those enhancements. You say that. We can move to that one. I wanted to bracket that one, but let's go to that one first. So you say that they're false speculations. Like, the job of a district court judge is a little bit to speculate about what really happened. You know, there's his story, her story, and the truth, right? And so we don't really know what the truth is. And they're trying to do their best to figure out what is the nature of the conduct, what is the likelihood of recidivism. All of those are speculative at some level. And if it, you know, got way out of hand, maybe we've got a story. But her speculation, that being the district court speculation here, didn't strike me as crazy. Your Honor, I think that the way that this did, in fact, get out of hand, and I don't disagree with Your Honor, that to some degree judges do need to speculate, especially on recidivism. But to argue that there is some sort of actual Plan C that involves still retained classified information, particularly in the face of the government going step-by-step through its investigation, and not only saying that there is no evidence of such a Plan C, but also that all of the evidence speaks to the contrary, means not only did the district court speculate, but there is absolutely no way that that was founded on a preponderance of the evidence. Where did the court make that finding? The finding that there is a Plan C, and there is information out there still hidden? I didn't see that anywhere in the record. I saw questions about it, and then at sentencing I saw the court saying, you know, listing out her reasons, and then she mentioned one of the things is that this sentence is long enough that anything they still have or they still know, right, you could remember information, will be stale by the time she gets out. That's all you're relying on is that statement? Your Honor, I think that you hit the nail on the head with respect to the primary statement being the JA-301, where the sentence is actually based on that potential information out there. But there were also references at the 5K hearing, twice at JA-461 and JA-463. Those are questions. Those weren't findings about findings at the sentencing. And I guess what I'm having trouble with is, again, to get back to the waiver, you don't get around an appellate waiver just by saying, I disagree with a factual finding, right? It has to, if we're going to recognize this as an exception to an appellate waiver, it has to be based in the Due Process Clause. It has to be materially false information that the sentence is based on, right? Which it would seem to me that means it has to be something more than just, I disagree with the District Court's factual finding. Don't those have to be different if we're going to make an exception to the waiver? Well, Your Honor, I think that in this instance it does transcend the appellate waiver. I think it does invoke due process. Well, where was it proven that this is materially false? Where is it proven in the record that we can know beyond a doubt that it's false, that they don't have information hidden somewhere, that they don't remember anything that would be useful, et cetera? The government meticulously laid out, both in a classified filing as well as in its sentencing argument, every investigatory step that was taken. You can say there's not evidence to support that they do have something. The government investigated it and didn't find anything. They don't have a reason to think. But has it been proven false? I thought it was a logical alternative that the court was exploring. It could not. It did not purport to say that it existed. It said there's a possibility of that so that I want to make sure the sentence covers everything. One of them is the relevance of the data, that they may have it hidden, supplanted. They may remember something. And having them in jail during a period when the data becomes stale was one of the things she was concerned about. It's a possibility. But I don't think she thought that that actually existed and her sentence depended on it. I think it was a logical alternative as a possibility. But a defendant's sentence still must be based on evidence that has some indicia of reliability by a preponderance. And in this case, it was a prosecutor saying- That's true if you don't have an appellate waiver, right? I mean, that's the rub, and I think that's what Judge Rushing is getting at. If we don't have an appellate waiver, and we'll talk to your colleague about this, if we don't have an appellate waiver, I totally understand your argument. But I take Judge Rushing's point to be, it can't be just a mere disagreement with not even actually a factual finding, but a suggestion of a finding, which is really all that we've got, or the possibility of that existence. That just doesn't sound like a due process. It might well be, on the merits without a waiver, a reasonable argument. It just doesn't look like an appellate waiver. I understand the court's position, and I think the recent decision this past August in Singletary, which is not a case that I cited in my brief, but on judicial vindictiveness- But that's based on this idea that you have a right not to be sentenced based on an unconstitutional ground, right? And so having a judge sentenced based on vindictiveness, we think, is a constitutional problem, right? Similarly, if the district court judge here had said, I'm going to sentence you to 262 months because you're a woman, right? We wouldn't have a lot of hang-up about the waiver here. I understand. I think that's pretty fair, but the challenge is, at a bare minimum, you've got to show us that what happened here was like a due process violation. And I would say that having a district judge step outside of its role as a district judge into the role of advocate, which is where I believe this went, with denying a 5K and conjuring up imaginary facts that the government was dispelling, that that rises to that level of a constitutional violation. Can I ask you a question in that regard? My reading of the transcript suggests that the court was, I don't know about- but was surprised by the fact that the letters had not been made available as part of the sentencing record until late in the game. And those letters seem to be the basis for these rulings on the enhancements or denial of the downward departures. What's the explanation? What was the story on that? I do not know, Your Honor. All I can say with respect to that is that clearly they were not viewed as a particularly weighty factor that needed to be considered because they were disclosed so late in the game. I did want to go back to the appellate waiver issue that Judge Richardson mentioned because there are two other ways in which the appellate waiver is transcended in this matter. The first is because the government breached the plea agreement in the response brief by failing to abide by its promise to recommend the three-level downward departure for acceptance as well as the three-level departure for the substantial assistance in the 5K motion. And therefore, given that the government- They failed to recommend that when? Wait, you said the response brief. The response brief indicates that- The response brief in which court? In this court? In this court says- Wait, and so- Yeah, that's why I'm trying to- I want to make sure I understand. They breached the plea agreement to recommend acceptance of responsibility reduction, and you think the recommendation is to this court? I think the recommendation is in perpetuity. I think there is nothing in that plea agreement that says that the government is not obligated to maintain- Not only is it- And they're recommending- I'm sorry, but your argument is that they're recommending to this group to apply or not apply an enhancement at sentencing? I mean, we don't sentence people. I mean, I know sometimes it feels like we do, right? We like to macro-manage the process where there's not a waiver, but like- We still don't sentence people. The government's language was that Mrs. Tobey was properly sentenced under the guidelines. That means that those guidelines, the government is advocating that those guidelines were properly applied, which is- You acknowledge that paragraph 17 of the plea agreement applies to appeals, right? Does both parties have the right during an appeal to support the sentence? Yes, and I did want to address that point, Judge Rushing, because I think it's an excellent catch in that plea agreement. That means that the government is free to argue that the sentence is lawful, at most that the judge did not act unreasonably, but it does not mean that it gets to contradict the plain terms of the other provisions of that plea agreement, and to the extent that there's any conflict or ambiguity, that favors Mrs. Tobey, and I see that I am out of time, Your Honor. All right, thank you, Ms. Carmichael. All right, Ms. Tarrin? May it please the court. This court should dismiss Tobey's appeal on the ground that Tobey has waived her right to appeal her conviction and sentence in her plea agreement. Tobey asked this court to decline to enforce her appeal waiver on three grounds. The first ground is that, according to Tobey, the government has violated the terms- Before you get to the legal argument, I commend your colleague below. After the district court rejected the three-year plea deal, you come back on the second plea deal, and your colleague below continued to tell the district court, despite some questioning from the district court that wasn't friendly, that three years was the right answer and stood by the position the United States had taken, and I commend him or her for doing that. I don't remember who it was. It might have been you. And so I totally get that. The district court deviates from that. And yet, you're here enforcing an appeal waiver, which obviously you have the authority to do. It's within your discretion to decide whether to enforce the waiver or not. We've held that the government plainly can waive it, even by inaction, much less by affirmative choice. And I'm just a little surprised at that, and that seems inconsistent to me. Is there anything you can tell me about that? I don't want to force into your privileged discussions. But it seems odd at the district court to say, no, three years, judge. We really think three years. And then get 262 coming out of it, 262 months coming out of it. And then you show up on appeal and you say, yep, appellate waiver. We're going to choose to enforce it. Yes, your honor. The relevant principle at issue here and the principle that the government seeks to vindicate on appeal in addition to this appellate waiver is that regardless of the party's agreement, the district court has the discretion to make its own sentencing determinations. Totally, totally fair. We all agree with that. And the question is, can this court review the district court's efforts? And generally speaking, the answer is yes, unless the parties agree to an appellate waiver and the government chooses to enforce that waiver. And so we all agree the district court's got discretion, but normally that discretion is reviewable in some level by this court. The exception obviously being where there's an appellate waiver. But that requires you to choose. This is not the district court's discretion. I'm talking about the government's discretion. Yes, and the government is defending the district court's judgment on the ground that the district court's judgment, regardless of whether it agreed or disagreed with the parties, was reasonable. And so this court… Totally fair, right? But if you really believe that, you could well just say, yes, appellate court, you should review whether it's reasonable instead of saying, no, it is unreviewable to you, appellate court, because we choose to exercise our discretion even though, right, it's 7X what we thought the just answer was. The executive has this discretion, right? They have the discretion to choose to require an appellate waiver and a plea agreement or not. They have the discretion to choose to enforce that waiver or not, right? That's the executive's discretion. The district court has all kinds of discretion, but the executive has discretion, too, that has a substantial impact on sentencing. I think some people believe, right, that the prosecutor has more discretion in sentencing than the district court does. This case might be a counterexample to that. But you have the discretion to choose to enforce that waiver or not in the interest of justice. You agree you could choose not to enforce it, right? Well, the government has a strong interest in enforcing appellate waivers. The point of the plea agreement was so that the defendant could waive their right to appeal and to plead guilty to the conspiracy count. And those were the benefits for the government in exchange for which the defendant here received significant benefits of ensuring that she would receive a sentence that did not exceed the low end of the applicable guidelines range and that the government would dismiss the remaining charges. But we know here, I mean, this is sort of a side note, but we know she had the same guidelines that she'd gone to trial and been convicted of all three counts, right? I mean, to say she received some grand benefit here is a little bit of a hard pill to swallow. But my only point is, and I'll leave and let my colleagues go, you do agree that the government can choose to waive the appellate waiver? Do you have that power? I suppose the government could decline to enforce the waiver. Seek to enforce the waiver. And that our court has repeatedly said that that is a permissible thing for the court to do, for the executive to do. I don't know if that's the case, Your Honor, but here we are seeking to enforce the appeal waiver because Toby has waived her right to appeal. And your representation is the government did so knowing that they had the choice and they chose to enforce it. Yes. Thank you. But even if this court declined to enforce her appeal waiver, then this court should not reverse the district court's decision because the district court did not abuse its discretion in sentencing Toby, either by imposing a sentence that was procedurally or substantively unreasonable. I know that Toby has argued here before you today that the district court violated her due process rights to be sentenced pursuant to information that's accurate. And although this court has recognized such a due process right, Toby has yet to identify any information that the district court relied upon that was inaccurate. The district court relied upon... Have we recognized that right as an exception to an appellate waiver? No, Your Honor, that's correct. You have not recognized that as an exception to an appellate waiver? I'm interested in figuring that out and figuring out if there's a difference between just any old error of law and an exception to an appellate waiver that rises to the level of a due process violation. The Supreme Court cases that we rely on and courts rely on when we talk about the right to be sentenced based on accurate information, the court comes out and says, we're not saying that every error by a district court is a due process violation, but we don't have a lot of helpful guidance on drawing that line. And I didn't know if the government has a position on how we distinguish between those two things so that the exception to the waiver doesn't swallow the rule of the waiver. Well, I don't think that this court should expand the narrow class of cases that qualifies for the miscarriage of justice exception to include this type of due process claim, because then anytime a defendant alleges that the district court's error, like a district court's error in making clearly erroneous factual findings, rises to the level of a constitutional violation, now that that would qualify for the miscarriage of justice exception. And then there wouldn't be much benefit to the government in an appeal waiver, and it could even discourage plea agreements. I mean, we do have Supreme Court cases not about appellate waivers, but saying that there is a due process right not to be sentenced based on completely false information. I mean, those cases where a judge rattled off a list of priors, and it turns out the defendant wasn't found guilty of many of them, but he was sentenced based on those, and the court said that was a due process violation. I just don't know if there's where, how do we distinguish between the due process violation and, as you say, clearly erroneous factual findings. Well, I think in this case, with respect to the due process violation, that it shouldn't qualify as an exception for the miscarriage of justice exception, because if it rose to the level of a constitutional violation, then the government wouldn't get this benefit from the plea agreement. And I think that this court would be on much more solid footing if it relied on the well-established and long-standing principle that this court articulated in the Marin case, which is that defendants can waive their constitutional rights in a plea agreement. Do you agree if the district court here in the final discussion, there's no discussion about this before, this is a hypothetical, but in the final discussion it said, and she killed Jimmy Hoffa, and because I think Jimmy Hoffa was really good or because Jimmy Hoffa's life had value, that's part of why I'm sentencing her to 262 months. Would that raise a constitutional concern? Yes, but defendants can waive. And why in the government's view would that be a constitutional concern? So, in other words, let me ask it maybe more pointedly, would that be barred, would a challenge to that be barred by the appeal waiver? I think it would be, because a defendant can waive their constitutional rights in a plea agreement, and that's a long-standing and well-established principle. And you would say that even though sentencing her to 262 months for killing, in part for killing Jimmy Hoffa, you agree that would be a due process violation, you just think it is one that is still waived, not waivable, but waived in this particular hypothetical. It's waivable, and here it was waived because she waived her right to appeal her sentence for any reason, including constitutional challenges, so yes. But even if this court considered that claim, this court should reject it on the merits, because Toby hasn't identified any inaccurate information that the district court relied on. The district court relied on these letters that she had attempted to send to her husband in violation of jail rules, where she was pressuring him to lie to authorities about her knowledge of the conspiracy so that she could avoid criminal responsibility for herself. Can you, Judge Niemeyer had a good question for your colleague. Why did the government not disclose these letters? The government explained at the second sentencing hearing that at the time that Toby had attempted to send these letters to her husband in December 2021 and January 2022, she had not yet pleaded guilty or entered into a plea agreement. And by the time she had subsequently agreed to do so, the government had moved on from those and was more focused on securing her cooperation. All right, so I read that, but that didn't make any sense to me. And that's what I'm hoping. Is that the only explanation you've got, right, that these letters attempting to obstruct justice were no longer relevant because she had pled guilty? Is that that's the government's position? Your Honor, that was the government's explanation for why it hadn't provided that information to the district court sooner. But the district court had asked the probation office to check with the jail to determine if there had been any developments. And that's when the jail informed the probation office that of these letters. And so the probation office recommended applying the obstruction of justice enhancement. And that's why the district court accepted its recommendation. So that's how it unfolded below. Just one more time. Can you explain to me why is it that the government did not disclose them? I mean, if I'm in the district court shoes, I've got some concerns about the truthfulness of the government's counsel. And so I guess as I'm sitting here, I have concerns about the truthfulness of the government's counsel. And so I'm asking why, as you understand it, they did not disclose them. So the government explained that at the time that she had agreed to plead guilty, she that was before that was after she had written these letters. And so the government was more focused on her cooperation and obtaining her cooperation at that time so that the government could ensure that there would be no further risks to the national defense. And so in order to get their cooperation, they chose to not disclose these letters to the district court? No, Your Honor. The government had just moved on from the letters and was more focused on securing her cooperation. And so when the district court asked the government why it hadn't provided this information sooner, the government explained that it wasn't intentional. The government had just moved on from that and was focusing on securing her cooperation. But the with respect to the letters and Toby's claim that the district court relied on information that was inaccurate at the second sentencing hearing, Toby's defense counsel admitted that Toby had written these letters to her husband, that she had attempted to send these letters to her husband in violation of jail rules, that she knew that the Bitcoin algorithm story was a cover story, that she knew the cover story was false, and that the reason why she had concocted this false cover story was to protect herself from criminal responsibility. The district court also relied on the victim impact statement of Navy Vice Admiral Houston, who explained that the Toby's misconduct irreparably compromised the national defense and even endangered the lives of more than 25,000 Navy sailors. And Toby's defense counsel said to the district court at the second sentencing hearing that they weren't disputing that assessment. With respect to these text messages that the Toby's exchanged where they were discussing their plans to flee the country and in which Diana Toby had directed the furtherance of the conspiracy by instructing her husband to be actively making plans to flee the country, at no point during any of the proceedings did Toby's defense counsel ever dispute these text messages. So Toby has yet to identify any information that the district court relied on that was inaccurate, even if this court considers that claim. But we think that Toby has waived her right to appeal her conviction and sentence, and Toby again asked this court to essentially invalidate her appeal waiver, also on the ground that according to Toby, the government has violated the terms of the plea agreement with the arguments that it's made on appeal in support of the district court sentence. But the government hasn't violated the terms of the plea agreement, where as you noted, Your Honor, the paragraph 17 says the parties have the right during any appeal to argue in support of the district court sentence. And even if this court were to accept Toby's interpretation of that provision as barring the government on appeal from adopting a position that's inconsistent with the position that it's adopted below, then the government still hasn't violated the terms of the plea agreement because the government's arguments on appeal are consistent with its arguments below. On appeal, the government hasn't argued that Toby was never entitled to these adjustments. For acceptance of responsibility or for substantial assistance, the government's argument is just that, although it disagrees with the district court's decisions, that the district court's decisions did not amount to reversible error because they were neither clearly erroneous nor an abuse of discretion. Thank you. Thank you, Ms. Tarrant. Ms. Carmichael. Judge Richardson, I wanted to address your point about the appeal waiver and the government's electability to non-enforce the waiver. And I think that it's important to remember that the government's job is to seek justice, not to eke every benefit out of a possible plea agreement. And I do commend my colleague at the district court level for maintaining his position and doing what was right in front of the district court. And it is disappointing that the government is not maintaining that position. The challenge is, I'm with you, but they're the only ones that get to decide what justice means there, right? I mean, that's the nature of their discretion, right, is they get to make that choice. And they've made the choice. And it is disappointing, Your Honor. Neither disappointing nor laudatory, right? It just is. Well, it is also a tragedy for my client, Your Honor. And then moving on to the third way in which the appellate waiver is not valid in this case or should not be prohibitive for this court in this case is the issue that I filed a motion for at the supplemental briefing last week. And this goes to Judge Niemeyer's question, which is that the provisions that the government recommended, the particular provisions of the sentencing guidelines, which is language from Rule 11C1C, that the three-point reduction for acceptance apply and the three-point reduction under the 5K apply. Those were binding on the court. What's your response to the government's response that, no, that's not true at all? It's only the provision that followed the colon that was binding. That is, whatever the applicable guideline is, you've got to be at the bottom of it. But the 11C1C was the specific provision, bottom of the guidelines, not everything else in the plea. I think that, and I think that you're correct, Your Honor, that that would be the government's position. But I think that when one looks at the plain language of Rule 11, that it's very clear in Rule 11C1C that the government will agree that a specific sentence, sorry, a particular provision of the sentencing guidelines, and that's what we have here under 5K1.1 and 3E1.1, does or does not apply. They could have put that after the colon. I think there was a colon. Maybe my recollection of the plea agreement is this part is pursuant to 11C1C, and there's a colon. And then after that, that's the part that's binding. But that wasn't the 5K language, was it? The 5K language was actually unequivocal. There was nothing in the 5K. It didn't follow the colon is what I'm saying, right? Right, but there's nothing in that plea agreement that would indicate that only that paragraph is subject to C1C. I thought the agreement allowed the district court to make the determinations on the enhancement, on the calculation of the guidelines. The agreement that the parties reached and the court agreed to was that whatever guideline range was determined, the court would impose the bottom level, the bottom sentence of that range. But I thought the guideline, the agreement left to the court the right to determine the guideline range by agreement. Only with respect to the base offense level of 37, Your Honor. With respect to the other provisions, the plea agreement unequivocally says that the government will agree that a three-level enhancement, I mean a three-level reduction. The government did that. The government recommended those things. The point is the agreement left to the court the right to make those determinations. Not under C1C. I'm talking about the agreement, the language of the agreement. There's two steps here. One is what the agreement says, and I think the agreement unequivocally says that the court will determine the guideline range and that the agreement was that the court imposed the bottom level of the guideline range. The first question is what the agreement says. And then the second question is your question raised in your supplemental memo is whether that type of an agreement is legal under 11C1C. That's exactly right, Your Honor. And the question is it would be very strange to say that the agreement says we agree on 11C1C with respect to A, but we don't agree with respect to B and C. And that's what the agreement said, and I think C1C allows that. C1C, the entire agreement, Your Honor, is governed by Rule 11C1C, which says that the government's recommendations on a particular guideline provision, not provision of the plea agreement, but guideline provision, is binding on the court. And that's what we have here. Thank you, Your Honor. Ms. Carmichael, do I understand you're court appointed? I am, Your Honor. Well, I want to recognize that. Number one, I want to recognize that is, of course, very important to the court and to your client, but also I want to recognize your very good job. We'll come down and greet counsel and then proceed on to the next case. Thank you, Your Honor.
judges: Paul V. Niemeyer, Julius N. Richardson, Allison J. Rushing